IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**DAN LEONARD ECKLUND, M.D.,**

      **Plaintiff,**                   **:**

**vs.**                            **:**    **CIVIL ACTION 09-0100-CG-C**

**ALABAMA MEDICAL LICENSING**   **:**
**COMMISSION,  et al.,**

                                 **:**

      **Defendants.**

## REPORT AND RECOMMENDATION

Plaintiff Dan Leonard Ecklund, M.D., proceeding *pro se* and *in forma pauperis*, filed a complaint chiefly for violations of his constitutional rights.  This action was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(a).[1]  Because plaintiff filed a motion to proceed without prepayment of fees under 28 U.S.C. § 1915, the Court is required to screen the amended complaint under 28 U.S.C. § 1915(e)(2)(B).  *Troville v. Venz,* 303 F.3d 1256, 1260 (11th Cir. 2002) (applying § 1915(e) to non-prisoner actions).[2]  After screening the amended complaint, it

---

[1]Local Rule 72.2(a) authorizes full-time magistrate judges to perform all duties prescribed in 28 U.S.C. § 636 including the entry of reports and recommendations as to dispositive matters.  Since it is the undersigned's opinion that all claims in this action should be dismissed, based on the preliminary screening of the *pro se* complaint, it is necessary to enter that opinion as a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

[2]Section 1915(e)(2)(B) provides:

    (2)  Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that --

is recommended that the federal claims be dismissed with prejudice, prior to service of

process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous and that the state law

claims be dismissed without prejudice.

**I.  Nature of Proceedings (Doc. 5).**

    **A.  Overview.**

    After plaintiff commenced this action by filing his original forty-seven page

complaint (Doc. 1), he was directed to re-file his complaint in order for it to comply with

the rules for pleading a complaint in federal court (Doc. 4), particularly the requirement

that his complaint be a "short and plain statement" giving fair notice to a defendant of the

claim and the factual grounds upon which it rests.  FED.R.CIV.P. 8(a); *Leatherman v.*

*Tarrant County Narcotics,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163 (1993).  Plaintiff was

also sent the Court's *Pro Se Litigation Manual* for his use in filing the amended

complaint.  While plaintiff did file an amended complaint (Doc. 5), the amended

complaint does not comply with the Court's order and the described manner of pleading.

Plaintiff was warned that the amended complaint would supersede his original complaint,

although he objects and contends otherwise in his amended complaint.  (Doc. 4 at 5-6;

---

    (A)  the allegation of poverty is untrue; or
    (B)  the action or appeal –
        (i) is frivolous or malicious;
        (ii) fails to state a claim on which relief may be
        granted; or
        (iii) seeks monetary relief against a defendant who
        is immune from such relief.

Doc. 5 at 2).

In the superseding amended complaint plaintiff invokes federal question jurisdiction under 28 U.S.C. § 1331, (*id.* at 2), and he seeks a remedy for violations of his constitutional and federal rights under 42 U.S.C. §§ 1983 and 1985. (*Id.* at 11). Plaintiff also invokes diversity of citizenship jurisdiction. (*Id.* at 3). In addition, plaintiff claims violations of Alabama's Constitution, without indicating if they are to serve as the basis for the Court's diversity-of-citizenship jurisdiction or to come under the Court's supplemental jurisdiction. (*Id.* at 15).

Briefly, plaintiff complains that he was arrested on September 30, 2003 and charged with twelve counts of unauthorized distribution of a controlled substance. (*Id.* at 11). On January 30, 2005, plaintiff was incarcerated on these charges. (*Id.* at 12). On April 13, 2005, he was released when the charges were dismissed. (*Id.*). In addition, plaintiff complains about his hearing before the Alabama Board of Medical Examiners ("ABME") on October 19, 2004, and his hearing before Alabama Medical Licensing Commission ("AMLC") on May 25, 2005, which resulted in his license to practice medicine in the State of Alabama being withdrawn. (*Id.*).

The defendants to this action are: ABME, AMLC, the members of these entities, their attorneys and investigators, and a witness.[3] In naming these thirty-four entities as

---

[3]The individuals who are defendants are: Gene G. Abel, M.D., William F. Addison, Kenneth W. Aldridge, M.D., Jorge A. Alsip, M.D., Johnny E. Bates, Raymond Lloyd Bell, M.D., James G. Chambers II, M.D., Neil E. Christopher, M.D., Craig H. Christopher, M.D., James R. Cooper, Esq., Edward C. Facundus, M.D., Richard M. Freeman, M.D., Steven P. Furr, M.D., Larry D. Dixon, Randy Dixon, Allan R. Goldstein, M.D., Jeff Grimsley, Jerry N. Gurley, M.D.,

defendants, only seven defendants are specifically referred to in the description of claims. The rights that were allegedly violated are found throughout the amended complaint, but a list of specific violations is found on pages 14 and 15.

In reviewing plaintiff's twenty-page amended complaint much repetitive argument and theory supporting the alleged violations are found along with minimal supporting factual allegations. (Doc. 5). The Court's discussion of the factual allegations and claims will not be extensive because the dates of the complained of acts are controlling the recommended disposition of this action.

### B. Amended Complaint. (Doc. 5).

Plaintiff alleges that defendant ABME's agents told the Madison County, Alabama, narcotics squad that plaintiff did not have authority to prescribe narcotics. (*Id.* at 11). On September 30, 2003, plaintiff was arrested at Dr. Gilliam's office where he worked part-time. (*Id.*). When plaintiff arrived at the police station, defendant Randy Dixon, an investigator for defendants ABME and AMLC, was there. (*Id.*). Even though at the time plaintiff had an Alabama medical license, an Alabama controlled substance license, and a federal drug enforcement license, he was charged with twelve counts of unauthorized distribution of a controlled substance. (*Id.*). Defendant ABME allegedly knew this because it issued two of the licenses and monitored the third one. (*Id.*). As

---

Leon C. Hamrick. M.D., David P. Herrick, M.D., Alcus Ray Hudson, David Charles Monteil, M.D., L. Daniel Morris Jr., M.D., Ross Bob Mullins Jr., M.D., Ray Murray, Marsha D. Raulerson, M.D., Patricia Emfinger Shaner, George Cicero Smith Sr., M.D., Wayne P. Turner, Esq., Pamela D. Varner, M.D., James Hodo Walburn, M.D., and James E. West, M.D.

result of the arrest, plaintiff lost his job.  (*Id.*).

On January 30, 2005, plaintiff was incarcerated on these charges.  (*Id.* at 12).  On April 13, 2005, after his case was transferred to another judge, the charges were dismissed and plaintiff was released.  (*Id.*).

An investigator with Alabama Board of Chiropractic Examiners, defendant Jerry Grimsley,[4] was sent to plaintiff's Magnolia Springs office to gain plaintiff's testimony against his partner, Fred Yost, a chiropractor.  (*Id.*).  Plaintiff was told that he should protect his medical license by testifying against Yost and other chiropractors who were believed to be practicing medicine without a license.  (*Id.*).  After plaintiff refused to cooperate, an investigator was sent to his office by defendant ABME to take action against him.  (*Id.*).  The reasons for the investigation, plaintiff believes, are his joint practice with a chiropractor, which is considered "bad policy," and his extensive use of EDTA chelation therapy in his practice, which is considered non-standard and "unconventional and alternative medicine."  (*Id.*).

On October 19, 2004, plaintiff attended a hearing where defendant ABME required that, under threat of losing his license, he be examined by defendant Dr. Gene Abel, a psychiatrist from Atlanta, Georgia.  (*Id.* at 13).  Plaintiff maintains defendant Abel is the only physician that defendants ABME and AMLC use in questions regarding "sexual conduct in medical practice" and that they denied his request for a psychiatrist of

_____

[4]This defendant's name appears to be a merging of two defendants names, Jeff Grimsley and Jerry N. Gurley, M.D.  The list of defendants has them next to each other.  (Doc. 5 at 6).

5

his choosing.  (*Id.*).  Defendant Abel is alleged always to make a finding of sexual

deviancy, whereas others do not, and to "provide[] damning sexual psychiatric reports for

all referrals from the ABME and the AMLC[,]" and he then treats the subject with

questionable "sexual psychotherapy" and "aversive therapy."  (*Id.*)

On May 25, 2005, the hearing before defendant AMLC was held with its attorney

defendant Cooper.  (*Id.*).  Prior to the hearing, plaintiff was searched by defendant Randy

Dixon, which is alleged to have been without probable cause and a warrant.  (*Id.*).

Plaintiff's attorney Thomas Bear did not appear for the hearing and, over Plaintiff's

protest, the hearing proceeded with him being unrepresented by counsel.  (*Id.*).  This

hearing is alleged to have violated numerous rights of plaintiff  under the United States

Constitution, the Declaration of Independence, and the Alabama Constitution.[5]  (*Id.* at 14-

15).

Evidence from defendant ABME, defendant Abel's report, and a deposition were

presented at the AMLC hearing.  (*Id.* at 16).  No witnesses were present, no cross

examination was allowed, and no rules of evidence were followed.  (*Id.*).  Plaintiff

complains that he did not have an opportunity to review the evidence prior to the hearing

and was not present for the deposition.  (*Id.*).  Defendant Abel's report, which he had not

seen, diagnosed plaintiff "with several kinds of sexual deviancy based on his adolescent

experiences."  (*Id.*).  These diagnoses as well as others are alleged to be false and

---

[5]A  listing of these violations with the attendant rights is found at pages 14 through 15.

6

contrary to DSM-IVR and to customary standards of medical and psychiatric practice. (*Id.*)

Defendant AMLC concluded, as did defendant Abel, that plaintiff is mentally impaired.  (*Id.*)   Plaintiff was not referred to the impaired physicians program, which is conducted by a member of defendant AMLC who has a business relationship with defendant Abel.  (*Id.*).  This failure to refer is alleged to be a violation of Section 34-24-400 of the Alabama Code and to be evidence of the intent to remove his medical license. (*Id.*).  Records from the hearing, including "all the "lurid details of the accusations" and confidential psychiatric diagnoses, were posted on the internet and at defendant AMLC's website and appeared on Fox 10 news, which plaintiff considers an attempt to humiliate him, instead of assisting him to recover, and in violation of Section 34-24-404 of the Alabama Code.  (*Id.*)

Plaintiff further maintains that three times he sent requests for admissions to defendants concerning the facts in part 4 of the original complaint, which received no response.  (*Id.* at 17).  Thus, plaintiff asserts that, by default, his statements in his two "presumptive letters" and "affidavit of truth" have been agreed to.  (*Id.*).

For relief, plaintiff seeks damages and a change from the present administrative law system to one that is constitutionally lawful in addition to, *inter alia*, a court order determining that defendant AMLC's decision was in error; abolishing defendant AMLC, defendant ABME and the physician licensure system; requiring the removal of his information from the internet; and mandating defendant ABME to sponsor a legislative

bill specifying the matters that would be referred to the state-court system, the standard of proof, the appropriate rehabilitation and punishment, and the system for investigating and monitoring suspected incidents of malpractice before referral to the state-court system. (*Id.* at 19).

## II. Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because plaintiff is proceeding *in forma pauperis*, the Court is reviewing the amended complaint (Doc. 5) under 28 U.S.C. § 1915(e)(2)(B).[6] Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32 (1989). A claim is frivolous as a matter of law where, *inter alia,* the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 1966 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[6]The frivolity and the failure-to-state-a-claim analysis contained in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989), was unaltered when Congress enacted 28 U.S.C. § 1915(b)(2)(B) in 1996. *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001). However, dismissal is now mandatory under § 1915(e)(2)(B). *Bilal*, 251 F.3d at 1348-49.

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* ___ U.S. ___, ___, 129 S.Ct. 1937, 1948 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly,* 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, ___ U.S. at ___, 129 S.Ct. at 1949.  However, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  *Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 920-21 (2007).

In a *pro se* litigant's action, his allegations are given a liberal construction by the Court.  *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595-596 (1972) (holding that a *pro se* litigant's allegations are held to a more lenient standard than the those of an attorney).  However, the Court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action."  *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).  Furthermore, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure."  *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

## III.  Discussion.

### A. Diversity of Citizenship Jurisdiction.

At the time when this action was filed, on February 26, 2009,  plaintiff indicated that he was a citizen of Alabama and that defendant AMLC was a citizen of Alabama. (Doc. 1, Civil Cover Sheet).  The address for plaintiff was given as 2159 South McKenzie Street, Foley, Alabama 36535, and the address given for defendant AMLC was P.O. Box Box 946, Montgomery, Alabama 36101-0946.  (Doc. 1, Complaint at 2).  The only defendant for whom a non-Alabama address was provided is defendant Abel.  Thus, most of the parties to this action at the time of its commencement were citizens or residents of Alabama.

In the amended complaint plaintiff claims that one of the basis for the Court's subject matter jurisdiction is diversity of citizenship jurisdiction.  (Doc. 5 at 2).  The Court's grant of diversity-of-citizenship jurisdiction is found in 28 U.S.C. § 1332, which provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."   28 U.S.C. § 1332 (a)(1).  In the present action, plaintiff was a citizen of Alabama at the commencement of this action as was defendant AMLC and other defendants.  *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570, 124 S.Ct. 1920, 1924 (2004) (diversity-of-citizenship jurisdiction depends on the state of facts as they existed at the time the complaint is filed). (citing *Mollan v. Torrance,* 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)).  The mere presence of one non-diverse defendant destroys diversity of citizenship jurisdiction.  *Wisconsin Dept. of Corrections v. Schacht,* 524 U.S. 381, 388, 118 S.Ct. 2047, 2052-53 (1998).  In

the action at hand, plaintiff and most of the defendants at the time of filing were not diverse.  Thus, this Court does not have diversity-of-citizenship jurisdiction over this action.

### B.  Federal Question Jurisdiction.

"Absent diversity of citizenship, a plaintiff must present a 'substantial' federal question in order to invoke the district court's jurisdiction."  *Wyke v. Polk County School Bd.,* 129 F.3d 560, 566 (11th Cir. 1997).  Under federal question jurisdiction, district courts are given "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "In general, a case 'arises under' federal law if federal law creates the cause action. . . ."  *Pacheco de Perez v. AT&T Co.,* 139 F.3d 1368, 1373 (11th Cir. 1998).  Whether an action arises under federal law is determined by the "well-pleaded complaint" rule.  *Id.*  That is, a court is required to look at the complaint to determine based on the face of the complaint whether the complaint contains a claim arising under federal law.  *Id.*

Plaintiff identifies federal question jurisdiction as the other basis for this Court's jurisdiction.   (Doc. 5 at 1).  He also mentions the remedial statutes of 42 U.S.C. §§ 1983 and 1985.[7][8]  Section 1983 "is not itself a source of substantive rights, 'but merely

---

[7]Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[8]Section 1985 provides:

(1)   Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, of from discharging any duties thereof: or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two more persons conspire for the purpose of impeding, hindering obstructing or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any

12

provides' a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 433 U.S. 137, 144 n.3, 99 S.Ct. 2689, 2694 n.3 (1979).  Section 1983 "by itself does not protect anyone against anything. . . . 'All civil suits, as every lawyer understands, which this act authorizes, are not based upon it; they are based upon the right of the citizen, the act only gives a remedy.'" *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617-18, 99 S.Ct.1905, 1916  (1979).

Furthermore, § 1983's language does not specify a statute of limitations.  *Owens v. Okure*, 488 U.S. 235, 239, 109 S.Ct. 573, 576 (1989).  The statute of limitations for a §

---

person, or class of persons, to the equal protection of the laws;

(3) Depriving person of rights or privileges

If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation against any one or more of the conspirators.

1983 action is borrowed from a state's general or residual statute of limitations for personal injury actions. *Wallace v. Kato,* 549 U.S. 384, 387, 127 S.Ct. 1091, 1094 (2007); *Owens*, 488 U.S. at 249-50, 109 S.Ct. at 582 (1989); *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 1949 (1985); *Lufkin v. McCallum,* 956 F.2d 1104, 1105 (11th Cir.), *cert. denied,* 506 U.S. 917 (1992). Alabama's two-year statute of limitations for personal injuries is the statute of limitations used for § 1983 actions heard in Alabama. *Lufkin,* 956 F.2d at 1105 n.2, 1108; ALA. CODE § 6-2-38(l). This two-year statute of limitations for § 1983 actions is also applied to § 1985 actions. *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir.), *cert. denied,* 540 U.S. 1219 (2004).

Even though state law determines the length of the limitations period, federal law governs when the statute of limitations begins to run, that is, when the cause of action accrues. *Wallace,* 549 U.S. at 388, 127 S.Ct. at 1095. Under federal law, "'[accrual occurs] when the plaintiff has 'a complete and present cause of action'' . . . that is, 'when plaintiff can file suit and obtain relief.'" *Id.* (brackets in original) (citations omitted).

The present action was filed by plaintiff on February 26, 2009. (Doc. 1). Plaintiff's claims, however, did not accrue during the two years before he filed this action; they accrued earlier.

The amended complaint contains many alleged violations. The Court will discuss the amended complaint's chief incidents that are commonly recognized as providing a basis for a cause of action. The other numerous alleged violations are subsumed by the Court's handling of these incidents because they are connected to an incident and

14

typically occurs prior to or at the same time of the identified incident.

In plaintiff's factual description of his claims, the first incident that he complains about is his arrest on September 30, 2003, claiming that it was a false arrest. (Doc. 5 at 11-12)  The statute of limitations for a false arrest claim begins to run when the alleged false arrest occurs.  *Id.* at 387, 127 S.Ct. at 1095 ("There can be no dispute that petitioner could have filed suit as soon as the allegedly wrongful arrest occurred, subjecting him to the harm of involuntary detention, so the statute of limitations would normally commence to run from that date.").  Plaintiff's false arrest claim is therefore barred by the two-year statute of limitations because the arrest did not occur within the two-year period before the filing of this action on February 26, 2009.

Related to his arrest on twelve counts for the unauthorized distribution of a controlled substance is plaintiff's incarceration on January 30, 2005, almost fifteen months after the arrest.  (*Id.* at 12).  No further factual information concerning how the incarceration came about is provided.  The torts of "[f]alse arrest and false imprisonment overlap: the former is a species of the latter."  *Id.* at 388, 127 S.Ct. at 1095.  The tort of false imprisonment is to remedy unlawful detention that is without legal process.  *Id.* at 389, 127 S.Ct. at 1095.  To determine when the cause of action accrues for false imprisonment, the date when the false imprisonment ends must be ascertained.  *Id.* at 389, 127 S.Ct. at 1096.  This date occurs when a person is held pursuant to legal process, such as when he is "bound over to a magistrate or [is] arraigned."  *Id.*

When a person is detained after being subject to legal process, the damages for

15

such detention come under the tort of malicious prosecution "which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." *Id.* at 390, 127 S.Ct. at 1096.  This detention becomes part of the damages for a claim for malicious prosecution and for the wrongful use of judicial process, but it is not a claim by itself.  *Id.* at 391, 127 S.Ct. at 1097.

Plaintiff has not provided the information necessary to determine the exact claim that he is presenting for his detention that commenced on January 30, 2005 and terminated on April 13, 2005, when the charges were dismissed.  It would appear that plaintiff was being held pursuant to legal process, but the Court can only surmise this.  If his detention was pursuant to legal process and the termination was favorable for him, then his claim for malicious prosecution accrued when the charges were dismissed on April 13, 2005.  *See Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364 (1994) ("Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, . . ., so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."); *Whiting v. Traylor,* 85 F.3d 581, 585-86 (11th Cir. 1996) ("The question of whether a disposition is 'favorable' is not always an easy one.  For example, . . .  a dismissal in the interests of justice was a not a favorable termination [and] . . . not all nol pros dispositions result in a termination in defendant's favor.").  On the other hand, plaintiff may have a claim for false imprisonment which terminates when legal process begins.  On a claim for false imprisonment the claim's

16

termination occurred on or before April 13, 2005, at the latest.

Whether plaintiff has a claim for false imprisonment or for malicious prosecution, or if there is a detention claim closely connected in time with his arrest, these claims accrued on or before April 13, 2005, when the charges were dismissed against him and he was released.  These claims accrued more than two years prior to the filing of this action on February 26, 2009.  They are, therefore, barred by the two-year statute of limitations.

After plaintiff's arrest on September 30, 2003 and detention on January 30, 2005, two hearings were conducted.  (Doc. 5 at 12).  The first hearing was held by defendant ABME and the second hearing was held by defendant AMLC.  As a result of the second hearing, plaintiff's license to practice medicine was revoked.  (*Id.* at 12) (The public records relevant to the proceedings of the defendant AMLC are available on the internet at http://www.albme.org/Default.aspx?Page=LicenseeDetails&ID=121.)  Plaintiff claims that he has been humiliated (*id.* at 16), defamed, and slandered and that there was a conspiracy with the goal to accomplish the revocation of his license.  (*Id.* at 11).  He also alleges that he was searched prior to the AMLC hearing by defendant Randy Dixon, who did not have warrant or probable cause.  (*Id.* at 13).

Plaintiff could have brought an action challenging these hearings and the revocation of his license to practice medicine, and for the humiliation, defamation, slander, conspiracy, and search when these events took place.  Public records of defendant AMLC clearly show that plaintiff's medical license was revoked on June 8, 2005.  At the very latest plaintiff had two years from June 8, 2005 to file an action.  The

filing of this action on February 26, 2009 is beyond two years from when his claims accrued.   Thus, the evidence is clear that plaintiff's § 1983 claims are barred by the two-year statute of limitations and they are due to be dismissed.

In addition to § 1983 plaintiff refers to 42 U.S.C. § 1985, but he does not mention the subdivision of that statute under which he wants to proceed.   Nonetheless, the statute of limitations for a § 1983 action is the same as the statute of limitations for a § 1985 action.  *Chappell,* 340 F.3d at 1283; *Rozar v. Mullis,* 85 F.3d 556, 561 (11th Cir. 1996); *Roberts v. Georgia,* 228 Fed. Appx. 851, at ** 2 (11th Cir. Apr. 6, 2007) (unpublished).[9] Plaintiff's § 1985 claims are barred by the statute of limitations for the reasons stated in addressing § 1983 claims.

For the above reasons, Plaintiff's federal claims are due to be dismissed as frivolous.  *Clark v. Georgia Pardons & Paroles Bd.,* 915 F.2d 636, 640 n.2 (11th Cir. 1990) (when an affirmative defense, such as the statute of limitations, will defeat a claim, the claim may be dismissed as frivolous)*; cf. Bock,* 549 U.S. at 215, 127 S.Ct. at 920-21 (when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, a complaint is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim).

**C.  Supplemental Jurisdiction.**

In addition, plaintiff claims that his rights under Alabama's Constitution  have

---

[9]  "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11TH CIR. R. 36-2 (2005).

been violated.  (Doc. 5 at 9).  Federal district courts, however, have been advised to dismiss state law claims when no federal claims remain in an action.  28 U.S.C. § 1367(c)(3); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."); *Nolin v. Isbell,* 207 F.3d 1253, 1258 (11th Cir. 2000) (recommending that supplemental jurisdiction be declined because there are no federal claims remaining in the action).  Because plaintiff's federal claims are recommended for dismissal, it is recommended that plaintiff's state law claims be dismissed without prejudice and the Court's supplemental jurisdiction not be exercised.

**IV.  <u>Conclusion</u>.**

Based upon the foregoing reasons, it is recommended the federal claims be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous and that the state law claims be dismissed without prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this 30th day of October, 2009.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.       *Objection*.  Any party who objects to this recommendation, or anything in it, must, within ten days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.       *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.


                        s/WILLIAM E. CASSADY
                        UNITED STATES MAGISTRATE JUDGE